**UNITED STATES of America, Plaintiff,**

v.

**Charles H. GILL, Jr., Defendant.**

**Crim. No. 95–03–P–C.**

United States District Court,
D. Maine.

March 15, 1995.

**150**

Helen Kazanjian, Asst. U.S. Atty., Portland, ME, for Government.

Stuart W. Tisdale, Jr., Tisdale & Nale, Portland, ME, for defendant.

### MEMORANDUM OF DECISION AND ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS

GENE CARTER, Chief Judge.

Charles H. Gill, Jr. is charged in a two-count indictment with knowingly using a passport, the issue of which was secured by means of a false statement in violation of 28 U.S.C. § 1542. Gill filed a motion seeking an order suppressing the passport that he turned over to an officer of the Oxford County Sheriff's Department when he was arrested and the statement contained in the passport regarding his place of birth. In addition, Gill moves to suppress the statement concerning his place of birth that he made while being transported to the Oxford County Jail and the statement that he made concerning his place of birth while being processed at the Oxford County Jail. Docket No. 6. Based on the evidence presented at the hearing, the Court concludes that the Motion to Suppress should be denied.

#### FACTS

The Government presented the following evidence at the motion hearing. On the morning of December 5, 1994, Corporal Christopher Wainwright of the Oxford County Sheriff's Department was contacted by Detective Richard Petrie of the Maine Attorney General's Office. Wainwright went to the Bethel Health Center, Gill's place of employment, in Bethel, Maine to meet with Petrie. Petrie told Wainwright that he was investigating Gill for practicing psychology without a license. Petrie had a printout of Gill's criminal history.[1] However, Petrie was having difficulty understanding the criminal history printout and, as a result, Wainwright ran another motor vehicle and criminal history check of Gill. From this, Corporal Wainwright discovered that there were two outstanding arrest warrants for Gill issued in 1988 from the police department in Rockland, Maine.

While at the Bethel Health Center, Wainwright also spoke with George Larson, the Executive Director of the Health Center, concerning Gill. At this time, Wainwright understood the investigation to concern whether Gill had a license to practice psychology in the State of Maine. While at the Bethel Health Center, Wainwright was shown some documents from Gill's personnel file. Those documents included a photocopy of the biographical information page from Gill's passport.

In the early evening hours of December 5, 1994, Wainwright and Petrie went to Gill's home to arrest him on the outstanding warrants. Gill was not home. The next morning, at approximately 7:45 a.m., Wainwright went back to the house to arrest Gill. Wainwright knocked at the door and a woman opened the door. Wainwright asked her if Dr. Gill was at home. The woman responded that Gill was there and, shortly thereafter, a man identifying himself as Gill came to the door. Wainwright told Gill that he had to arrest him on the outstanding warrants. Wainwright permitted Gill to change his clothes.

As Wainwright and Gill were leaving the residence, Wainwright asked Gill to bring some "positive identification" with him. Gill then went into a vehicle parked at the house and retrieved United States Passport # F862547 and handed it to Wainwright. Wainwright took the passport, handcuffed Gill, and put him in the sheriff's department

---

**1.** Earlier that morning, Wainwright was in the Oxford County District Attorney's office and overheard part of a conversation regarding a man named Gill practicing psychology and counseling without a license. At that time, Wainwright had never heard of Gill. However, after he met with Petrie, Wainwright realized that the complaint he overheard being made about Gill at the District Attorney's Office was related to Petrie's investigation.

vehicle. While en route to the Oxford County Jail, Wainwright struck up a conversation with Gill, stating: "The skiing must be different over here than in Switzerland. Is that why you came here?" To which Gill responded that he was born in Switzerland and had lived there until sometime in the 1970s.

At approximately 8:50 a.m., Gill was delivered to the Oxford County Jail and turned over by Wainwright to a jail booking officer. The information contained in the booking sheet, Govt. Ex. 1, was provided by Gill. Among other items, the booking sheet lists Gill's place of birth as Switzerland. At approximately 11:00 a.m., Gill was advised of his *Miranda* rights by Petrie in the presence of Wainwright. After these warnings were given, Gill indicated that he wanted to speak with an attorney. Petrie and Wainwright immediately broke off the interview.[2]

## DISCUSSION

Gill argues that this Court should suppress: (1) the passport and the written representation in the passport that he was born in Switzerland; (2) his statement that he was born in Switzerland made to Wainwright while being transported to Oxford County Jail; and (3) his statement that he was born in Switzerland made in connection with his admission to Oxford County Jail. Gill claims that all the evidence is the product of unlawful custodial interrogation. The Court will deal with each piece of evidence in turn.

### A. The Passport

Gill requests that the Court suppress his passport because the giving of the passport to Wainwright was a testimonial act obtained as a result of custodial interrogation prior to being administered *Miranda* warnings. The Government responds that the voluntary act of producing the passport is not a "testimonial act." Moreover, the Government argues that, even if producing the passport were testimonial, the request for identification was routine and not designed to elicit an incriminating response.

The Court assumes, without deciding, that the act of producing the passport was testimonial. Therefore, the Court must determine whether the production of the passport was the result of a "custodial interrogation" by Wainwright. *United States v. Maguire,* 918 F.2d 254, 262 (1st Cir.1990), *cert. denied,* 499 U.S. 950, 111 S.Ct. 1421, 113 L.Ed.2d 474 (1991) (*Miranda* warnings must be given before a suspect is subjected to custodial interrogation.).[3] Interrogation, for Miranda purposes, refers to "any words or actions on the part of the police (other than those normally attendant on arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis,* 446 U.S. 291, 301, 100 S.Ct. 1682, 1689, 64 L.Ed.2d 297 (1980) (footnotes omitted).

The evidence reveals that Gill voluntarily produced the passport in response to a nonspecific request that Gill have some "positive identification" with him for booking purposes. The request was made pursuant to the established practice of the Oxford County Sheriff's Department. Contrary to Defendant's assertion, prior to Gill's arrest, Wainwright had no reason to believe that Gill's identity was a matter at issue.[4]

At the suppression hearing, Wainwright testified that the only matter then in question was whether Gill possessed a license to practice as a psychologist in the State of Maine and that at the time of Gill's arrest, Wainwright did not know that the passport contained a false place of birth. There is no evidence in the record that Wainwright should have expected that the request for identification, at that time, would lead to evidence of criminal activity. Accordingly, the Court finds that a police officer in Corporal Wainwright's position could not have known that a request for identification was reasonably likely to elicit an incriminating response. There is no basis to suppress the passport or its contents.

2. Wainwright later obtained some information for Gill's arrest sheet, Govt.Ex. 2. The motion to suppress does not attack this information.

3. The Government does not deny that Gill was in "custody" from the time he left his house.

4. Wainwright's request for identification was not made to induce an incriminating response. He simply asked Gill for some identification for booking purposes. *Gill* chose to produce the passport.

**152**

### B. The Statement Made During Transport

■ Gill requests that the Court suppress the statement he made to Wainwright regarding his place of birth while being transported to the Oxford County Jail because it was the product of custodial interrogation prior to his having been administered *Miranda* warnings. The Government responds that the statement was not made in response to interrogation. Rather, it argues that Gill volunteered the information regarding his place of birth in the course of general conversation. The Court agrees with the Government.

The conversation, which took place as Gill was being transported to the Oxford County Jail, was initiated by Wainwright, who commented: "The skiing must be different over here than in Switzerland. Is that why you came here?"[5] To which Gill responded that he was born in Switzerland and had lived there until sometime in the 1970s. As previously discussed, Wainwright had no reason to believe that Gill's place of birth was even tangentially an issue in the investigation. His comment was not intended to elicit any statement by Gill as to his place of birth. Moreover, nothing had changed since the time of Gill's arrest to make Wainwright think that Gill's place of birth now had any more relevance to the investigation regarding his possession of a license than it had previously. Accordingly, the Court finds that a police officer in Corporal Wainwright's position should not have known that his question was reasonably likely to elicit an incriminating response. The statement by Gill is not subject to suppression.

### C. Statement Made During Booking

■ Again, Gill contends that the statement concerning his place of birth that he made while being processed at the Oxford County Jail should be suppressed because it was the product of custodial interrogation prior to his having been administered *Mi-*

*randa* warnings. The Government responds that the question was part of the routine booking procedure and, thus, does not constitute interrogation within the meaning of *Miranda*. This position is clearly correct.

It is well established that "routine booking questions," or questions posed to secure the personal history data necessary to complete the booking process, are exempt from *Miranda*'s reach. *Pennsylvania v. Muniz*, 496 U.S. 582, 601, 110 S.Ct. 2638, 2650, 110 L.Ed.2d 528 (1990); *United States v. Abell*, 586 F.Supp. 1414, 1417–22 (D.Me.1984). Thus, absent evidence that the police used the booking questions to elicit incriminating statements from Gill, routine biographical questions are not considered interrogation. There is no such evidence in this case. No evidence indicates that the booking officer participated in Petrie's investigation or even knew of it.

At the hearing, Wainwright testified that it was part of the standard procedure at the Oxford County Jail to complete a booking sheet similar to the one filled out on Gill. The booking sheet on Gill was admitted in evidence. Govt.Ex. 1. On that form, Switzerland is listed as Gill's place of birth. The Court finds that the inquiry into Gill's place of birth was for recordkeeping purposes only. Moreover, as discussed above, at the time Gill was admitted to the Oxford County Jail, there was no reason any participating officer[6] should have known that a question, asked as part of the booking process, was reasonably likely to elicit an incriminating response. Thus, the Court finds that the statement made by Gill is not entitled to *Miranda*'s protection.

Accordingly, Gill's Motion to Suppress is *DENIED* in all respects.

So *ORDERED*.

---

5. The Court assumes that Wainwright thought, at the time of the arrest, that Gill was born in Switzerland because he had seen a photocopy of the biographical page from Gill's passport the previous day at the Bethel Health Center.

6. The record does not even clearly establish, that Petrie, who did not participate in either the arrest or booking of Gill, was then aware that there was an issue to be resolved in respect to Gill's identity or place of birth as opposed to the question of whether he possessed a license to practice psychology in Maine.